1    CROWELL & MORING LLP
     David J. Ginsberg (CSB No. 239419)
2    dginsberg@crowell.com
     Nathanial J. Wood (CSB No. 223547)
3    nwood@crowell.com
     Thomas Koegel (CSB 125852)
4    tkoegel@crowell.com
     Agustin D. Orozco (CSB 271852)
5    aorozco@crowell.com
     515 South Flower St., 40th Floor
6    Los Angeles, CA  90071
     Telephone: 213.622.4750
7    Facsimile: 213.622.2690

8    Attorneys for Defendant,
     NAVCOM DEFENSE ELECTRONICS, INC.
9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  GOULD ELECTRONICS INC., | Case No. 2:05-cv-04158-JFW-VBKx |
| 14              Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NAVCOM DEFENSE ELECTRONICS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 15       v. | |
| 16  NAVCOM DEFENSE ELECTRONICS, INC.; CLIFFORD | |
| 17  C. CHRIST, L. GUY HECKER, JR., WILLIAM W. BELCHER, HARRY | |
| 18  A. CAUNTER, WAYNE R. KETTERLING, FRANK T. | Date:  April 7, 2014 |
| 19  SCALFARO, WILLIAM SNYDER, JAMES VAN CLEAVE, and | Time: 1:30 p.m. Ctrm: 16 – Spring Street |
| 20  MALCOLM WINTER, | |
| 21              Defendants. | 1st Amended Supplemental Complaint filed:      January 24, 2014 |
| 22 | Discovery Cutoff:    August 18, 2014 Motion Cutoff:       September 8, 2014 |
| 23 | Trial Date:          October 21, 2014 |
| 24 | Judge:       Honorable John F. Walter |

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO IN SUPPORT OF NAVCOM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT;
CASE NO. 2:05-CV-04158-JFW-VBKx

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................... 3

III.   GOVERNING LAW ............................................................................... 5

       A.    Summary Judgment Is Appropriate On The Statute Of
             Limitations When The Material Facts Are Not Disputed..................... 5

       B.    California's Fraudulent Transfer Act Imposes a Four-Year
             Statute of Limitations ....................................................................... 6

       C.    The Discovery Rule Does Not Protect Plaintiffs Who Fail To
             Investigate Their Claims ................................................................... 8

IV.    ARGUMENT ......................................................................................... 9

       A.    The Statute Of Limitations Bars Gould's CFTA Claims Based
             On Transfers That Took Place Prior To December 6, 2009 ................. 9

       B.    Gould Cannot Rely On The Discovery Rule To Preserve Its
             Time-Barred Claims .......................................................................... 9

             1.    Gould Failed To Inquire for More Than Six Years After
                   First Expressing Concern About the Sale of the NavCom
                   Property .................................................................................. 10

       C.    Gould Cannot Raise A Genuine Dispute Of Material Fact That
             It Properly Investigated Its Claims .................................................. 12

V.     CONCLUSION .................................................................................... 16

CROWELL
& MORING LLP
ATTORNEYS AT LAW

i

MEMO IN SUPPORT OF NAVCOM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT;
CASE NO. 2:05-CV-04158-JFW-VBKx

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505 (1986) ...................................................... 5

4

*Aryeh v. Canon Bus. Solutions, Inc.*,
   55 Cal. 4th 1185 (2013) ........................................................................ 5

5

6

*Bay Area Rapid Transit Dist. v. Super. Ct. of Alameda County*,
   (1996) 46 Cal. App. 4th 476, 481 .......................................................... 5

7

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548 (1986) ...................................................... 5

8

9

*Employers Ins. of Wausau v. Granite State Ins. Co.*,
   330 F.3d 1214 (9th Cir. 2003) ................................................................ 9

10

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) .......................................................................... 8

11

12

*Jablon v. Dean Witter & Co.*,
   614 F. 2d 677 (9th Cir. 1980) ................................................................ 5

13

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ................................................................. 7, 8, 12

14

15

*Kline v. Turner*,
   87 Cal. App. 4th 1369 (2001) ................................................................ 8

16

*Neilson v. Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (C. D. Cal. 2003) ............................................ 7, 12

17

18

*Orr v. Bank Of America, NT & SA*,
   285 F. 3d 764 (9th Cir. 2002) ................................................................ 6

19

*SBAM Partners v. Oh*,
   2004 WL 2580424 *3-6 (Cal. Ct. App. 2004) ........................................ 9

20

21

*Snapp & Assocs. Ins. Servs., Inc., v. Robertson*,
   (2002) 96 Cal. App. 4th 884, 889-90 ...................................................... 5

22

**Statutes**

23

28 U.S.C. § 2202 ...................................................................................... 14

24

**Other Authorities**

25

Fed. R. Civ. P. 56(a) .................................................................................. 5

26

Fed. R. Civ. P. 69(a) ................................................................................ 14

27

Cal. Civ. Code § 3439.09(a) ...................................................................... 6

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

ii

MEMO IN SUPPORT OF NAVCOM's MOTION
FOR PARTIAL SUMMARY JUDGMENT;
Case No. 2:05-cv-04158-JFW-VBKx

## I.     INTRODUCTION

Gould Electronics Inc.'s ("Gould") First Amended Supplemental Complaint ("FASC") alleges three claims under California's Fraudulent Transfer Act, all of which require a plaintiff to file suit within four years of the allegedly fraudulent transfer.  Thus, any alleged fraudulent transfers that occurred prior to December 6, 2009 – four years prior to the filing of the Supplemental Complaint – are time-barred.  Yet Gould seeks to set aside transfers that allegedly were made prior to that date.  Gould's claims based on those transfers are stale and should be dismissed.

Gould attempts to avoid the effect of the statute of limitations by alleging that NavCom Defense Electronics, Inc. ("NavCom" or "NDE") and its shareholders effected a secret plot in 2007 to liquidate NavCom's major asset (its real estate) and distribute the sale proceeds to its shareholders in an effort to place those assets out of Gould's reach.  Gould concedes in the FASC that the sale of NavCom's property occurred in 2007 and that the allegedly fraudulent transfers started that same year. Given that much of its claims are time-barred on their face, Gould attempts to plead around the statute of limitations by arguing that the four year limitations period should be tolled because it did not know, nor did it have reason to believe, that NavCom had transferred assets to its shareholders prior to February 2013, when Gould received copies of NavCom's financial statements.

But Gould's assertions are firmly contradicted by the record – long before February 2013, Gould's attorneys had repeatedly accused NavCom of seeking to liquidate its assets for the purposes of avoiding its liability to Gould.  Indeed, as early as June 2005 – even before the sale of NavCom's property – Gould's attorneys sent NavCom a letter specifically complaining that it believed that NavCom was liquidating its major asset for the purposes of dissipating those assets through transfers to its shareholders.  *See* NavCom Defense Electronics Inc.'s Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Partial Summary Judgment ("UF") 2 ("NavCom apparently intends to

1     […] distribute the proceeds to its limited number of shareholders at a time of

2     decreasing NavCom business activity, all in an effort to avoid NavCom's CERCLA

3     obligations."). Later, in 2007, shortly after NavCom had completed the sale of its

4     real estate, Gould sent another letter reiterating that accusation. Those accusations

5     were repeated over the years in correspondence between the parties and in filings

6     with this Court.

7        Inexplicably, although Gould repeatedly accused NavCom of improperly

8     dissipating assets, it failed to take any steps to investigate its concerns that such

9     transfers were taking place. It was not until January 2012, almost five years after

10    NavCom sold the property, and more than six years after Gould first wrote to

11    NavCom accusing it of selling its property for the purposes of placing its assets out

12    of Gould's reach, that Gould finally requested information from NavCom regarding

13    the disposition of the proceeds from the sale.

14        Gould's delay is even more astonishing in light of the fact that during this

15    same period, it successfully asserted a statute of limitations defense in a related

16    state court litigation with NavCom, arguing that "words penned by [NavCom's]

17    own counsel" prior to the filing of NavCom's suit demonstrated that NavCom

18    "clearly believed" that Gould was engaged in wrongdoing and that "[i]t is the

19    knowledge and suspicions evidenced by this demand that trigger the running of the

20    statute."[1]  Request for Judicial Notice ("RJN"), Ex. 11 at 94-95.

21        Under black-letter California law, Gould's tactical decision to delay

22    investigation into its purported claims is fatal to its argument that it should be

23    entitled to the protections of the discovery rule. Having slept on its rights, Gould

24    should not be permitted to assert any claims based on transfers that occurred more

25

26             [1]     In the state court litigation between the parties, Gould's motion for partial summary judgment was granted and affirmed on appeal because the superior court concluded that NavCom was not diligent in pursuing discovery of Gould's Illinois litigation against its insurers despite the fact that Gould told both this Court and NavCom that there was no such insurance.

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

MEMO IN SUPPORT OF NAVCOM's MOTION
FOR PARTIAL SUMMARY JUDGMENT;
Case No. 2:05-cv-04158-JFW-VBKx

than four years before December 6, 2013, the date it filed the Supplemental Complaint. As Gould previously argued when seeking to defeat NavCom's state court breach of contract and conversion claims, "[b]ecause NDE's . . . [prelitigation] demand makes clear that NDE had sufficient information to demand that Gould stop 'misusing' its assets, no equitable doctrine can excuse NDE's inaction during the statutory period." RJN, Ex. 11 at 96. The same is true for Gould's inaction in this matter.

NavCom respectfully requests that the Court grant its Motion and enter an order dismissing Gould's claims based on transfers that occurred prior to December 6, 2009.

## II.    STATEMENT OF FACTS

On June 9, 2005, Gould filed suit against NavCom, alleging that NavCom was obligated to reimburse Gould for the costs of remediating groundwater contamination in the East Side El Monte Operable Unit ("EMOU"). UF 1. On April 26, 2007, the Court entered its declaratory judgment, providing that NavCom was liable to Gould for 60% of future necessary CERCLA response incurred in connection with groundwater remediation of the EMOU. UF 3, UF 4.

Throughout this period, Gould repeatedly expressed concerns that NavCom would be unable to satisfy eventual judgments entered against it:

- June 20, 2005: Eleven days after Gould filed its Complaint in this action, its counsel wrote to NavCom's counsel regarding NavCom's proposed sale of its real property and asserted that NavCom intended to **distribute the proceeds [from the sale of the property] to its limited number of shareholders at a time of decreasing NavCom business activity, all in an effort to avoid NavCom's CERCLA obligations.**" UF 2 (emphasis added).

- August 6, 2007: Shortly after the Court entered the Declaratory Judgment, Gould's counsel wrote again to NavCom's counsel, contending that

1    NavCom had "cashed out its most valuable asset, the NavCom property."  UF 5,

2    UF 6.

3            • March 13, 2009: Gould filed a motion to reopen the litigation and

4    enforce declaratory judgment and attached the grant deed and news accounts of the

5    sale of the NavCom property to its counsel's declaration.  UF 6, UF 8.

6            • November 6, 2009:  Gould filed a motion to enforce the declaratory

7    judgment and argued that "shortly after the Court entered its Judgment, NavCom

8    sold its principal asset, the NavCom property in El Monte . . . . [f]urther delay

9    simply invites NavCom to divert funds . . . ."  UF 9.

10           • March 10, 2010: Gould argued to the Court that the sale of the

11   NavCom property "impairs the collectability of Gould's declaratory judgment."  UF

12   11.

13           Despite these repeated accusations, Gould took no steps to seek discovery or

14   inquire into the disposition of the sale proceeds.  To the contrary, on August 30,

15   2008, Gould issued a payment demand to NavCom after the Ninth Circuit affirmed

16   the District Court's declaratory judgment, stating that "[t]his demand supersedes

17   Gould's earlier demand dated May 10, 2007.  Although NDE paid no part of that

18   demand, in light of the pending appeal, and WQA [Water Quality Authority]

19   reimbursements, **Gould elected to defer further collection efforts until the Ninth**

20   **Circuit issued its decision**."  UF 7 (emphasis added).

21           After years of admitted inaction, Gould finally informally approached

22   NavCom in January 2012 and requested financial statements.  UF 14, UF 15.  After

23   NavCom objected to the request, Gould filed a discovery motion[2] in March 2012,

24   nearly four and a half years after it learned of the sale of the NavCom property.  UF

25   6, UF 17, UF 18, UF 19.  This Court (and the Special Master) granted Gould's

26   _____

27        [2]    Specifically, Gould sought the production of NavCom's audited
     financial statements in addition to documents related to the sale of the NavCom
28   property.  UF 18.

1   motion for discovery, accepting Gould's argument that the proposed discovery was

2   "in aid of" Gould's 2007 declaratory judgment.  UF 20, Docket No. 547.

3   **III.   GOVERNING LAW**

4       **A.   Summary Judgment Is Appropriate On The Statute Of
            Limitations When The Material Facts Are Not Disputed**

5

6       Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary

7   judgment if there is no genuine issue as to any material fact and the moving party is

8   entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc*., 477

9   U.S. 242, 247-48, 106 S.Ct. 2505 (1986); *Jablon v. Dean Witter & Co*., 614 F. 2d

10  677, 682 (9th Cir. 1980) (applying rule in context of the statute of limitations).  The

11  moving party bears the initial burden of demonstrating the basis for the motion and

12  identifying the portions of record that establish the absence of a triable issue of

13  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

14  If the moving party meets this initial burden, the burden then shifts to the

15  nonmoving party to present specific facts showing that there is a genuine issue for

16  trial.  *Celotex*, 477 U.S. at 324.

17      As Gould argued to the California Court of Appeal,

18          although "[r]esolution of a statute of limitations defense is

19          normally a question of fact," the "trial court may

20          determine the matter as one of law," where "the

21          uncontradicted facts established through discovery are

22          susceptible of only one legitimate inference." *Snapp &*

23          *Assocs. Ins. Servs., Inc., v. Robertson*, (2002) 96 Cal.

24          App. 4th 884, 889-90;[3] *see also Bay Area Rapid Transit*

25          *Dist. v. Super. Ct. of Alameda County*, (1996) 46 Cal.

26

27      [3]   *Overruled on other grounds by Aryeh v. Canon Bus. Solutions, Inc.*, 55
    Cal. 4th 1185 (2013).

28

App. 4th 476, 481 (once defendant establishes at

summary judgment that a complete defense exists, "the

burden shifts back to the plaintiff to show that a triable

issue of one or more material facts exists . . . as to that . . .

defense") (internal quotations omitted).

RJN, Ex. 12 at 148-49.  Because California law governs Gould's fraudulent transfer

claims, this rule applies even though this case was filed in federal court.  *See Orr v.*

*Bank of America, NT & SA*, 285 F. 3d 764, 780 (9th Cir. 2002) (applying state law

and holding that "[w]hether a plaintiff has discovered or should have discovered the

cause of her injury is ordinarily a question of fact. However, when uncontroverted

evidence proves that the plaintiff discovered or should have discovered the facts

giving rise to the claim, such a determination can be made as a matter of law."

(internal quotations and citation omitted)).

### B.   California's Fraudulent Transfer Act Imposes a Four-Year Statute of Limitations

California Code of Civil Procedure section 3439.09 sets forth the applicable

statute of limitations for a party pursuing fraudulent transfer allegations.

An action based upon a so-called "actual intent" fraudulent transfer must be

filed "within four years after the transfer was made . . . or, if later, within one year

after the transfer was or could reasonably have been discovered by the claimant."

Cal. Civ. Code § 3439.09(a).[4]

To come within the "if later" one year limitations period, it is not sufficient

for a plaintiff to allege or prove simply that it did not discover the transfers within

four years.  An action may be filed more than four years after the disputed transfer

---

[4]      NavCom acknowledges that Gould's constructive fraudulent transfer claims that are based on distributions that took place on or after December 6, 2009 are not time barred by the CFTA's statute of limitations.  There is no factual support for NavCom's alleged insolvency, but that is an issue to be determined by this Court at trial and not in connection with the instant motion.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

MEMO IN SUPPORT OF NAVCOM's MOTION
FOR PARTIAL SUMMARY JUDGMENT;
Case No. 2:05-cv-04158-JFW-VBKx

1  only if the transfer could not "reasonably have been discovered" during the initial

2  four-year period and the action was filed within one year of when the transfer was

3  discovered or could reasonably have been discovered.

4       In *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1145 (C.

5  D. Cal. 2003), the court reasoned that the key inquiry for applying the CFTA's

6  discovery rule was whether the transfer was or could "reasonably […] have been

7  discovered" within the four years following the transfer.  As the Court noted,

8       A claim for intentional fraudulent transfer under the CUFTA

9       must be brought within four years after the transfer was made

10      or, if later, one year after the transfer was or reasonably could

11      have been discovered by the claimant.  In no event may an

12      action be commenced later than seven years after the date of

13      the transfer.  The seven-year reach back period is an exception

14      to the four-year statute of limitations, and applies only where

15      the claimant alleges that he did not discover, and could not

16      reasonably have discovered, the transfer within the four-year

17      period.

18  *Id.*[5]  Accordingly, Gould's claims based upon transfers that took place before

19  December 6, 2009 (four years prior to the filing date of its Supplemental

20  Complaint) are time-barred because the undisputed facts confirm that Gould "could

21  reasonably have discovered" such transfers within four years of the dates of those

22  transfers.

23

24  [5]      After setting forth the statutory framework, the court concluded that a factual issue existed that prevented the defendants from prevailing upon their

25  motion to dismiss plaintiffs Third Amended Complaint.  Here, summary judgment is proper because Gould admits the facts necessary for this Court to enter partial

26  summary judgment. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988) ("While resolution of the statute of limitations issue is normally a question of fact, where the

27  uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper.").

28

**C.    The Discovery Rule Does Not Protect Plaintiffs Who Fail To Investigate Their Claims**

The California Supreme Court has held that "under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 803 (2005).  The plaintiff "need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co*., 44 Cal. 3d 1103, 1111 (1988); *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001) (affirming summary judgment on fraud claim based on statute of limitations grounds and holding that a "plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery.")[6]

Applying these rules, the California Supreme Court in *Jolly* held that a claim for products liability was time barred because the plaintiff had made pre-litigation statements of concern regarding the product in question and "points to no evidence contradicting her candid statements." *Jolly*, 44 Cal. 3d at 1112.  Thus, the court held that the plaintiff was to be "held to her admission; she suspected that defendants' conduct was wrongful . . . well . . . before she filed suit.  This suspicion would not have been allayed by any investigation." *Id*.

---

[6]    In the state court proceedings, Gould cited to, and relied on the *Kline* decision in arguing that NavCom's claims in that case were time-barred.  *See* RJN, Ex. 12 at 151.

And in a case remarkably similar to this one, the California Court of Appeal held that a plaintiff's "duty to inquire" was triggered (thus starting the clock on the statute of limitations) in a fraudulent transfer case when the judgment debtor transferred its interest in real property around the time that judgment in the parties' underlying litigation was entered. *SBAM Partners v. Oh*, 2004 WL 2580424, *3-6 (Cal. Ct. App. 2004).[7]

## IV. ARGUMENT

### A. The Statute Of Limitations Bars Gould's CFTA Claims Based On Transfers That Took Place Prior To December 6, 2009

Gould asserts that NavCom improperly issued distributions to its shareholders from 2007 to 2011. UF 24. But Gould elected to wait to file its Supplemental Complaint until December 6, 2013. UF 23. Because California's Fraudulent Transfer Act requires claims to be filed within four years of the alleged fraudulent transfer, all of Gould's claims based on transfers made prior to December 6, 2009 are time-barred and should be dismissed.

### B. Gould Cannot Rely On The Discovery Rule To Preserve Its Time-Barred Claims

Gould has argued that its claims are not stale because its claims were tolled under the "discovery rule." But under controlling law, Gould's prolonged failure to investigate its claims precludes it from invoking the discovery rule.

In the FASC, Gould alleges that it "could not reasonably have discovered that NavCom had made the listed payments prior to February 7, 2013" because NavCom purportedly "actively concealed from Gould the listed payments and NavCom's insolvency, from April, 2007 until February 7, 2013, when NavCom . . .

---

[7]     Although unpublished California appellate decisions are not precedential, they may be considered as persuasive authority regarding how California courts would rule on an issue. *See, e.g., Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

1   produced its financial statements for 2007 to 2011." UF 25.  But left unsaid in its

2   allegations is the fact that Gould made the conscious decision to wait over six years

3   to investigate its claims that NavCom had fraudulently transferred assets to its

4   shareholders.  This is fatal to its argument that it is entitled to invoke the discovery

5   rule.

6           1.      **Gould Failed To Inquire for More Than Six Years After**
                    **First Expressing Concern About the Sale of the NavCom**
7                   **Property**

8           There is no genuine dispute that Gould's duty of inquiry was triggered no

9   later than mid-2005, when it first wrote to NavCom to express concerns regarding

10  the collectability of its judgment in light of the proposed sale of the NavCom

11  property.

12          On June 20, 2005, just eleven days after Gould filed its original Complaint in

13  this action, Gould's counsel wrote to counsel for NavCom and referenced the

14  potential sale of the NavCom Site to The Olson Company[8]:

15          **To outsiders not directly involved in NavCom's transaction**

16          **with The Olson Company, it certainly appears that**

17          **NavCom apparently intends to reap this windfall for the**

18          **value of the NavCom site (purchased for a mere $1) and**

19          **distribute the proceeds to its limited number of**

20          **shareholders at a time of decreasing NavCom business**

21          **activity, all in an effort to avoid NavCom's CERCLA**

22          **obligations.**

23  UF 2.  (emphasis added).  This letter essentially alleges the elements of a fraudulent

24  transfer action.  Yet, Gould waited more than six years after the date of this letter to

25

26  ─────────────────
27          [8]      NavCom had originally entered into an agreement to sell the NavCom
    property to The Olson Company, a real estate developer.  That sale was not
    consummated for reasons unrelated to this Motion.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

MEMO IN SUPPORT OF NAVCOM's MOTION
FOR PARTIAL SUMMARY JUDGMENT;
Case No. 2:05-cv-04158-JFW-VBKx

even informally approach NavCom and request information about proceeds from the sale of the NavCom Site and NavCom's finances.[9]  UF 14.

Later, Gould reiterated its complaint that it believed that the sale of NavCom's property would impair its ability to satisfy its claims against NavCom. On August 6, 2007, after the Court entered its judgment, Gould wrote to NavCom, stating that:

> **If NDE intends to attempt to stay Gould's enforcement of its judgment pending NDE's appeal, the amount [of NavCom's proposed bond] is obviously inadequate . . . It should not be a surprise that Gould views the amount of your proposed supersedeas bond as inadequate, particularly where NDE has now cashed out its most valuable asset, the NavCom property**.

UF 5 (emphasis added).[10]

Again in 2009, Gould expressed these same concerns in a filing with this Court.  In late 2009, Gould requested that the Court enter a judgment that would have forced NavCom to pay Gould in advance for NavCom's share of all of the anticipated costs of the groundwater remediation.  In support of that effort, Gould argued to the Court that:

---

[9]     In its March 2012 discovery motion, Gould admitted that it obtained publicly available information relating to NavCom's sales and other company information by perusing Dunn & Bradstreet and Westlaw.  UF19.  Gould referenced the publicly available information in support of its argument that NavCom suffered a decline in its business in 2007 and 2008 such that it was necessary for Gould to conduct discovery with respect to the disposition of proceeds from the sale of the NavCom property.  UF 19.  The publicly available information was then attached to the declaration of Gould's counsel.  UF 19.

[10]    Further underscoring the unreasonableness of Gould's failure to investigate is the fact that NavCom never filed a supersedeas bond.  Given that Gould argued that it needed a large bond to protect its interests in light of NavCom's sale of its property, it is striking that Gould failed to investigate its fraudulent transfer claims once it learned that NavCom would not be posting a bond in any amount.

1    Gould reiterates its concern that NavCom's recent sale has
2    substantially impaired the collectability of Gould's declaratory
3    judgment.  Gould previously could have levied on the
4    contaminated but unencumbered NavCom property at 4123
5    Arden Drive in El Monte.  NavCom no longer has title to
6    unencumbered real property in California.  Nor does Gould
7    know the whereabouts of the funds NavCom received from its
8    sale of the Arden Drive property.  Gould has no current money
9    judgment that would allow it to conduct a judgment debtor
10   exam of NavCom.  Finally, NavCom has posted no bond to
11   secure payment to Gould.

12   UF 10, UF 11.

13   Under *Jolly*, Gould's numerous "candid statements" of NavCom's purported
14   wrongdoing triggered a duty of inquiry as a matter of law.  When a party expressly
15   admits that it has concerns of wrongdoing, it is obligated to investigate those
16   concerns in order to obtain the protection of the "discovery rule."  *Jolly*, 44 Cal. 3d
17   at 1112; *see also Neilson*, 290 F. Supp. 2d at 1145.  But as discussed below, the
18   record is clear that Gould undertook no such reasonable investigation.

19
20   **C.    Gould Cannot Raise A Genuine Dispute Of Material Fact That It Properly Investigated Its Claims**

21   Gould will likely argue that the discovery rule applies to preserve its claims.
22   This argument finds no support in the record.

23   First, Gould may argue that it is irrelevant that it expressed concern regarding
24   the potential sale of the NavCom property in 2005 because it had not yet obtained a
25   judgment in this action at that point.  Such an argument is directly contradicted by
26   Gould's own pleadings, in which it alleges that "[t]he liability of NavCom to Gould
27   arose long prior to the dates on which the listed payments were made; specifically,

28

the NavCom liability to Gould arose under the 1988 Stock Purchase Agreement and 1988 Assumption Agreement . . . ."  UF 26.  Of course, if Gould believed that it was a creditor of NavCom for CFTA purposes under the 1988 agreements, then it was obligated to immediately start investigating its claims once it had reason to believe that NavCom was attempting to evade its obligations by selling its property and transferring the proceeds to its shareholders.  Nor can Gould argue that it was somehow ignorant of its duty of inquiry – during the same period that Gould could have been, but was not, investigating its fraudulent transfer claims against NavCom, Gould was arguing in a state court litigation with NavCom that NavCom's claims in that case were time-barred because NavCom had failed to fulfill its duty of inquiry and that consequently, "no equitable doctrine can excuse NDE's inaction during the statutory period."  UF 13.

Second, Gould may argue that even if it did have a duty to investigate, it was excused from doing so because NavCom would not have cooperated with that investigation (i.e., NavCom would not have provided Gould with information regarding its distributions to shareholders).  But whether NavCom would have volunteered the information is irrelevant, because Gould cannot dispute that it had the ability after entry of the Court's April 26, 2007 Declaratory Judgment to compel the disclosure of this information from NavCom through post-judgment discovery.  In the Declaratory Judgment, the Court held that it:

> shall retain exclusive jurisdiction to resolve any and all disputes between Plaintiff and Defendant that may arise under or relate to this judgment for declaratory relief, including but not limited to compliance with an enforcement of its terms.

*See* UF 4, Docket No. 408.  Indeed, it is on precisely this basis that Gould ultimately compelled NavCom to produce the information that it used as the basis of its Supplemental Complaint.  UF 20, UF 22, Docket No. 547 (stating that Gould

"ultimately secured copies of NDE's privately-held financial statements by successfully arguing that the Master had the authority to order such discovery pursuant to 28 U.S.C. § 2202 and under Fed. R. Civ. P. 69(a) in 'aid of execution' of Gould's April 26, 2007 declaratory judgment.").

Third, the record makes clear that Gould made a conscious decision to wait to investigate its purported claims for fraudulent transfer.  In addition to the fact that Gould failed to take action to investigate its claims after accusing NavCom of seeking to fraudulently transfer its assets, on August 30, 2008, Gould issued a payment demand to NavCom after the Ninth Circuit affirmed the District Court's declaratory judgment.  UF 7.  Gould noted that "[t]his demand supersedes Gould's earlier demand dated May 10, 2007.  Although NDE paid no part of that demand, in light of the pending appeal, and WQA [Water Quality Authority] reimbursements, **Gould elected to defer further collection efforts until the Ninth Circuit issued its decision**."  *Id.* (Emphasis added).  Gould's admitted "election" to "defer further collection efforts" on the declaratory judgment is the epitome of a party ignoring its duty of inquiry.  As noted above, Gould's prolonged failure to inquire is especially mystifying given the fact that Gould now admits that it had the right to seek post-judgment discovery in aid of enforcement of the declaratory judgment.[11]

Gould cannot now credibly argue that it did not believe that sale proceeds would be distributed to NavCom's shareholders.  Gould's efforts to rewrite history cannot overcome the undisputed factual record that exposes its consistent efforts to point to the sale of the NavCom property as a nefarious act that somehow prejudiced Gould.  Gould's hypothesis that fraudulent transfers would certainly follow the sale of the NavCom property dates back to June 20, 2005, when it

---

[11]    Gould's admitted "election" to ignore post-judgment discovery until 2012 also directly conflicts with this Court's recent Order in which the Court concluded that Gould was a "creditor" with a "claim" under the UFTA because of this Court's April 26, 2007 declaratory judgment.

1   unambiguously wrote that NavCom would certainly distribute sale proceeds as soon

2   as the sale of the NavCom property closed.  Gould reiterated this theme in August

3   2007 when Gould alleged that NavCom had "cashed out" its "most valuable asset."

4   Gould's August 6, 2007 letter is especially telling given the context of the June 20,

5   2005 letter, because by August 2007, Gould had obtained a declaratory judgment

6   that it concedes was already enforceable.  Gould did not even investigate its claims

7   in 2009 and 2010 when, in multiple pleadings, it reiterated its concerns regarding

8   the sale of the NavCom property and that sale's impact on the collectability of

9   Gould's 2007 declaratory judgment.

10          Gould's unexcused failure to act earlier means that its causes of action based

11   on transfers that took place prior to December 6, 2009 are time-barred.  Gould

12   eventually sought discovery "in aid of" that declaratory judgment in 2012, but

13   offers no explanation of why it waited so long to do so, even though it had

14   expressed concerns as to the whereabouts of sale proceeds for over six years.  To

15   date, Gould has ignored this issue, suggesting instead that the only relevant fact was

16   the date that Gould received NavCom's audited financial statements (*i.e.*, February

17   7, 2013).  Gould does include a passing reference to its inability to earlier discover

18   NavCom's shareholder distributions in its First Amended Supplemental Complaint,

19   but Gould offers no support for its conclusory statement.  Gould likely offers no

20   explanation for its delay because there is no logical explanation.  The discovery rule

21   exists, in part, to protect those parties that diligently seek to discover facts but are

22   ultimately unsuccessful.  Here, Gould improperly attempts to apply the rule

23   exclusively to save it from its own repeated failures to inquire.  That it cannot do.

24          Gould's failure to investigate is fatal to its efforts to sidestep the statute of

25   limitations.  A party cannot sit on its rights, failing to investigate its express

26   concerns of wrongdoing until after the expiration of the statute of limitations, and

27   then seek to invoke the protections of the discovery rule.  Because there is no

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

MEMO IN SUPPORT OF NAVCOM's MOTION
FOR PARTIAL SUMMARY JUDGMENT;
Case No. 2:05-cv-04158-JFW-VBKx

1   dispute of material fact that Gould failed to take reasonable steps to investigate its

2   claims until January 2012 – more than six years after first expressing its belief that

3   NavCom intend to fraudulently transfer its assets – Gould cannot invoke the

4   discovery rule, and claims based on transfers occurring more than four years before

5   the filing of the Supplemental Complaint are time-barred.

6   **V.      CONCLUSION**

7          For all the reasons stated herein, NavCom respectfully requests that this

8   Court grant NavCom's motion for partial summary judgment and Order that all of

9   Gould's claims based on shareholder distributions that took place prior to

10  December 6, 2009 are time-barred.

11                                      Respectfully submitted,

12  Dated:    March 10, 2014                      CROWELL & MORING LLP

13

14                                          _____/s/ David J. Ginsberg_____
15                                              David J. Ginsberg
                                              Attorneys for Defendant
16                                     NAVCOM DEFENSE ELECTRONICS, INC.

    LAACTIVE-601443718.7
17

18

19

20

21

22

23

24

25

26

27

28

MEMO IN SUPPORT OF NAVCOM's MOTION
FOR PARTIAL SUMMARY JUDGMENT;
Case No. 2:05-cv-04158-JFW-VBKx