1  Richard S. Yugler, OSB No. 80416
   ryugler@lbblawyers.com
2  David L. Blount, OSB No. 80458
   dblount@lbblawyers.com
3  David N. Goulder, OSB No. 79496
   dgoulder@lbblawyers.com
4  Conde T. Cox, OSB No. 090977
   ccox@lbblawyers.com
5  LANDYE BENNETT BLUMSTEIN LLP
   3500 Wells Fargo Center
6  1300 SW Fifth Avenue
   Portland, Oregon 97201
7  T: (503) 224-4100/F: (503) 224-4133

8  Robert A. Grantham, Bar No. 100808
   rgrantham@hoffmangrantham.com
9  HOFFMAN & GRANTHAM LLP
   515 S. Flower St., 36th Floor
10 Los Angeles, CA  90071-2221
   T: (213) 236-3777 /F: (626) 765-6938

11
12 Attorneys for Plaintiff
   GOULD ELECTRONICS INC.

13

14            IN THE UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA

15 GOULD ELECTRONICS INC.,            )
16                                    )
17                      Plaintiff,    )    Case No.: CV05-4158-JFW (VBKx)
                                      )
18           vs.                      )    **GOULD'S MEMORANDUM IN**
                                      )    **OPPOSITION TO NDE'S**
19 NAVCOM DEFENSE ELECTRONICS         )    **MOTION FOR PARTIAL**
                                      )    **SUMMARY JUDGMENT**
20 INC., CLIFFORD C. CHRIST, ET. AL.  )
                                      )    Date:  April 7, 2014
21                      Defendants.   )    Time: 1:30 pm
                                      )    Ctrm: 16 – Spring Street
22                                    )
                                      )
23                                    )    1st Amended Supplemental
                                      )    Complaint filed:    January 24, 2014
24                                    )    Discovery Cutoff:  August 18, 2014
                                      )    Motion Cutoff:      September 8, 2014
25                                    )    Trial Date:           October 21, 2014
                                      )
26 _____   )    Judge:  Honorable John F. Walter
27

28

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR  97201
T:(503)224-4100/F:(503) 224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - i

08518-028/772928.doc

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................3

ARGUMENT .........................................................................................................14

    1.   The Timeliness of Gould's CFTA Claims is Governed By
         California Civil Code § 3439.09(a), Not California Common Law .......14

    2.   Genuine Issues of Material Fact Prevent This Court From Ruling
         as a Matter of Law that Gould Could Reasonably Have Discovered
         NDE's Fraudulent Dividend Distributions before February 7, 2013 .....17

CONCLUSION .......................................................................................................24

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503) 224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - ii

*08518-028/772928.doc*

1

## TABLE OF AUTHORITIES

2                                                                                                    **Page**

3    **Cases**

4    *Halliburton Energy Services, Inc. v. NL Industries, Inc.*, 618
     F. Supp. 2.d 614 (S. Tex. 2009).............................................................20

5
     *Hu v. Wang*, Case No. E045445, 2009 WL 1919367
6    (Cal. Ct. App. July 6, 2009) ...................................................................16

7    *In re Main Industrial Loan & Finance*, 454 BR 133 (Bktcy. Ct. Hawaii 2011) .....16

8    *Jolly v. Eli Lilly,* 44 Cal. 3d 1103 (1988)................................................16

9    *Kline v. Turner*, 87 Cal. App. 4th 1369 (2001) .....................................17

10   *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101
     (C.D. Cal. 2003)...........................................................................14, 15

11
     *SBAM Partners v. Oh*, Case No. B168187, 2004 WL 2580424
12   (Cal. Ct. App. Nov. 12, 2004)...........................................................15, 16

13   *Schmidt v. HSC, Inc.,* ___ P.3d ___ (Ha. 2014), 2014 WL 144153 .......................16

14

15   **Other Authorities**

16   Cal. Civ. Code § 338. .............................................................................15

17   California Civil Code (CFTA) § 3439.09(a) ...........................................1, 14, 15, 16

18   28 U.S.C. § 2202 ....................................................................................20

19   Fed. R. Civ. P. 9(b) ................................................................................23

20   Fed. R. Civ. P. 11 ..................................................................................23

21   Fed. R. Civ. P. 69(a) ..............................................................................20

22

23

24

25

26

27

28

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503) 224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - iii

*08518-028/772928.doc*

1      Plaintiff Gould Electronics Inc. ("Gould") submits the following opposition
2   to Defendant NavCom Defense Electronics Inc.'s Motion for Partial Summary
3   Judgment:

4                                **INTRODUCTION**

5      California Civil Code § 3439.09(a) provides that a fraudulent transfer claim
6   based on "actual intent" must be filed "within four years after the transfer was
7   made . . . , or, if later, <u>within one year after the transfer was or could reasonably</u>
8   <u>have been discovered by the claimant</u>." (Emphasis added)  Gould has alleged that
9   it could not reasonably have discovered NDE's dividend distributions prior to
10  February 7, 2013, when NDE finally chose to comply with this Court's
11  September 7, 2012 Order mandating production of its private financial statements.

12     NDE repeatedly asserts that "Gould's prolonged failure to investigate its
13  claim" establishes as a matter of law that Gould cannot demonstrate a question of
14  material fact as to when it could reasonably have discovered NDE's dividend
15  distributions.  NDE Memo, p. 9.  While Gould rejects NDE's characterization of
16  Gould's conduct, a "failure to investigate" is fatal only if by that investigation,
17  Gould could reasonably have discovered at an earlier date when NDE had made
18  the dividend transfers and that the transfers were fraudulent.  At a minimum, there
19  are material facts in dispute as to when Gould could reasonably have discovered
20  NDE's dividend transfers.

21     As found by the Master in his August 2, 2012 Report and accepted and
22  adopted by this Court in its September 7, 2012 Order, "NavCom [NDE] is a small
23  privately held company and its financial resources are not transparent."  UF 27.  As
24  NDE itself has trumpeted throughout the proceedings of this case, Gould had no
25  evidence, and could have no evidence, of any transfer, fraudulent or otherwise,
26  without first gaining access to NDE's private financial records.[1]

27

28  _____
        [1]  NDE also ignores the Master's May 2010 rejection of Gould's
    November 2009 Motion that he consider the entry of a money judgment for the

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 1      *08518-028/772928.doc*

As is abundantly clear from the record, Gould could not secure access to NDE's records without a court order. Even a court order was not sufficient. Gould secured the Master's Report & Recommendation on August 2, 2012 and this Court's Order mandating production of otherwise inaccessible financial data on September 7, 2012. NDE immediately appealed that Order. Only after it failed to secure a stay from either this Court or the Ninth Circuit did NDE elect to produce the documents rather than face a contempt hearing. Thus, even after Gould initiated legal process to secure NDE's financial records, NDE successfully delayed their production for nearly one year.

As detailed below, NDE's Statement of Uncontroverted Facts does nothing more than establish that Gould has previously expressed its concerns to NDE and to this Court that proceeds from the 2007 sale of the NavCom Site could be improperly distributed.[2] Gould's early efforts to place this issue before this Court and the Master were rejected for lack of evidence. Gould's options were (i) to file a lawsuit alleging fraudulent transfers, with no evidence of transfers, much less

_____ (Cont.)

present value of NDE's share of the total cleanup costs for the East Side EMOU. The Master ruled:

> With respect to collectability, . . . [t]here is no reason to give it particular weight here, just because NavCom has sold the property that is the subject of the cleanup. There is no indication that NavCom received anything but fair market value ($30 million) for the property. NavCom has leased a facility and remains in operation. There is no proof that NavCom is, or will become unable to honor the obligations imposed on it by virtue of this litigation. There is no evidence of a fraudulent transfer of NavCom's assets. UF 28.

Elsewhere in his May 2, 2010 Report & Recommendation, the Master also noted:

> "In the present matter, NavCom appears to be an ongoing business, with $30 million in recent liquidity in a business climate where "cash is king." UF 29.

[2] NDE's Statement of Ultimate Facts also misconstrues statements in Gould's correspondence, cites irrelevant excerpts from Gould's briefs in NDE's California State court insurance case against Gould, and most significantly omits material facts that conflict with its theory that as a matter of law Gould could reasonably have discovered NDE's dividend transfers before February 7, 2013. Gould will address those matters below and in its separate Statement of Genuine Issues of Material Fact.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 2      08518-028/772928.doc

wrongful transfers, and risk Rule 11 sanctions and counterclaims for abuse of process; or (2) renew its effort to protect its declaratory judgment once the Master and this Court finally rejected NDE's insurance offset defense and entered Gould's first money judgment on November 3, 2011, nearly two years after the case had been referred to the Master for all further proceedings.

Gould chose the latter course, and based on the facts set forth below, this Court cannot conclude as a matter of law that Gould could reasonably have discovered NDE's fraudulent transfers before February 7, 2013.

## STATEMENT OF FACTS

Gould submits the following Statement of Facts both to correct certain misstatements in NDE's Statement of Facts and to identify additional material facts essential to a determination of whether Gould could reasonably have discovered NDE's fraudulent transfers before February 7, 2014.

NDE's Statement of Facts accurately states when this case was filed, what it was about, and the judgment entered against NDE on April 26, 2007.  From that point on, it abandons all pretense of objectivity, beginning with its assertion: "Throughout this period, Gould repeatedly expressed concerns that NavCom would be unable to satisfy eventual judgments entered against it."  NDE Memo, p. 1.

"Throughout this period" apparently includes the two years before Gould's declaratory judgment was entered.  NDE begins with Mr. Grantham's June 20, 2005 letter to NDE's counsel, advising that he is aware that NDE intends to sell the NavCom Site to the Olson Company, and stating:

> "To outsiders not directly involved in NavCom's transactions with The Olson Company, it certainly appears that NavCom apparently intends to reap this windfall for the value of the NavCom site (purchased for a mere $1) and distribute the proceeds to its limited number of shareholders at a time of decreasing NavCom business

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 3    *08518-028/772928.doc*

1    activity, all in an effort to avoid NavCom's CERCLA obligations."

2    UF 2.  Contrary to the description in NDE's Memo (p. 3), Mr. Grantham does not

3    pretend to know NDE's actual intent.

4        NDE neglects to include its own counsel's July 6, 2005 response, which

5    recognized Mr. Grantham's letter for what it was, nothing more than typical

6    attorney chest-thumping, and he responded in kind:

7        "NavCom owes no duty to your client to give notice of the potential

8        sale of NavCom's property and hereby advises that your client's effort

9        will  be  treated  as  an  intentional  tortuous  [sic]  interference  with

10       NavCom's business opportunities."

11   UF 30.  Of course, as NDE later acknowledges (NDE Memo, p. 10, n. 8), the 2005

12   potential sale of the NavCom Site to The Olson Company did not close.  Thus, no

13   proceeds from that abandoned sale were distributed in the two years before Gould

14   secured its declaratory judgment.

15       Gould's declaratory judgment was entered on April 26, 2007.  UF 3.  The

16   very next day, NDE appealed that judgment to the Ninth Circuit.  UF 97.  NDE did

17   not file a bond while its appeal of the declaratory judgment was pending.  UF 31.

18   Accordingly, Gould periodically sent letters to NDE documenting the response

19   costs and requesting reimbursement, beginning with letters dated May 10 and

20   May 24, 2007.  UF 32.  Gould specifically asked, in light of the pending appeal,

21   whether NDE intended to pay its share of ongoing incurred response costs.  UF 32.

22   NDE responded by letter dated June 7, 2007, disputing many of Gould's specific

23   costs as well as the adequacy of Gould's cost documentation in general, but

24   proposing that NDE post a bond of $470,571.34, the amount of Gould's May 5,

25   2007 demand, "for the duration of NDE's appeal."  UF 33.

26       To maintain its theme that Gould has always been concerned about NDE's

27   diversion of sale proceeds, NDE's Memo (pp. 3-4) quotes selectively from Gould's

28   August 6, 2007 response, citing only the phrase that NavCom had "cashed out its

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 4      08518-028/772928.doc

most valuable asset, the NavCom property."  The balance of the paragraph reveals that Gould's concern was the obvious insufficiency of NDE's proposed bond:

> Finally, your June 7, 2007 letter proposes a supersedeas bond of $470,571.34, *i.e.,* essentially the amount NDE owes Gould for response costs incurred through only February 2007.  If NDE intends to attempt to stay Gould's enforcement of its judgment pending NDE's appeal, the amount is obviously inadequate.  Gould already has incurred an additional five months of response cost expenditures since February 2007.  Furthermore, as noted on the enclosed schedules, the bulk of the capital expenditures, in excess of $10,000,000, are scheduled for the next two years, coincidentally the same period during which NDE's appeal will be pending.  It should not be a surprise that Gould views the amount of your proposed supersedeas bond as inadequate, particularly where NDE has now cashed out its most valuable asset, the NavCom property.

> Again, please advise promptly whether NDE intends to apply for a stay of Gould's judgment.

UF 34.  Gould's comment simply highlights the patent insufficiency of NDE's proposed bond when NDE was then flush with cash.[3]  NDE never did post a bond during its appeal from the declaratory judgment.  UF 31.

The Ninth Circuit affirmed Gould's declaratory judgment in a 6-page unpublished memorandum on August 19, 2008.  UF 35.  Gould's August 30, 2008 letter updated the amount now due from NDE ($1,514,387.65).  UF 36.  NDE also cites a footnote from that letter apparently to suggest that Gould did not diligently pursue "discovery or inquire into the disposition of the sale proceeds."  NDE

---

[3]  As noted, NDE proposed a bond for the duration of the appeal but only to cover NDE's share of Gould's response costs incurred through February 2007. The Ninth Circuit issued its mandate on June 3, 2009, nearly two years later. UF 43.  NDE's share of response costs by then exceeded $2 million.  UF 38.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 5        *08518-028/772928.doc*

1   Memo, p. 4.   But the August 30, 2008 letter expresses no concern over the
2   disposition of the proceeds of the 2007 sale of the NavCom property, despite
3   NDE's current effort to suggest otherwise.

4       NDE did not respond to Gould's August 30, 2008 letter and did not pay the
5   amount due.   Instead, it petitioned the Ninth Circuit for rehearing, and over
6   Gould's objection, NDE also secured a stay from the Ninth Circuit's consideration
7   of NDE's Petition for Rehearing pending resolution of a case before the U.S.
8   Supreme Court.  UF 37.

9       In 2009, counsel for the parties again corresponded, with Gould providing an
10  update on its response costs and NDE denying any liability based on a setoff for its
11  pending state insurance action against Gould and again challenging the sufficiency
12  of Gould's response cost documentation.  UF 38.

13      Gould filed its Motion to Reopen Case and Enforce Declaratory Judgment
14  on March 13, 2009.  UF 39.  Gould explained its decision to file in its March 17,
15  2009 letter to NDE.

16        "The District Court's declaratory judgment was enforceable
17        both before and after the Ninth Circuit affirmed that judgment . . . .

18          Gould is entitled to a determination of the amount owed by
19        NDE under the declaratory judgment.   If NDE then wants to bar
20        collection of that judgment until after the Ninth Circuit disposes of its
21        pending Motion for Panel Rehearing, it can do so by applying for a
22        stay under FRAP 8 and posting a bond, just like any other judgment
23        debtor.

24          NDE does not propose to pay Gould any sums at the present
25        time, even its 60% of undisputed costs, such as EPA oversight costs,
26        for which there is no partial reimbursement by the WQA.  Nor does
27        NDE agree that a money judgment should be entered at the present
28        time, or that it should post a bond to secure Gould's judgment.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 6   *08518-028/772928.doc*

NDE's consistent responses to Gould's requests for reimbursement since the declaratory judgment was entered on April 26, 2007 make clear that NDE will not comply with that judgment without the District Court's participation.  For these reasons, Gould has chosen to proceed with its Motion to Reopen as we discussed we would in our phone conference on February 16, 2009."  UF 40.

At the April 13, 2009 hearing on Gould's Motion to Reopen, however this Court determined that it lacked jurisdiction to reopen the case while NDE's appeal to the Ninth Circuit was pending:  ". . . I am persuaded, and I've done some independent research, that it's inappropriate to reopen the case now until the Writ of Mandate issues."  UF 41.

The Ninth Circuit denied NDE's Petition for Rehearing without discussion on May 26 and issued its mandate on June 3, 2009.  UF 42 and 43.  At a status conference on June 29, 2009, the Court advised the parties that he would likely refer further proceedings in the case to a discovery referee.  UF 44.  Shortly after Gould filed its motion to enforce declaratory judgment on November 5, 2009 (UF 9), the Court did exactly that and assigned all further proceedings in the case to the Special Master, John Wagner.  UF 45.

In both its November 9, 2009 Motion and in subsequent pleadings, Gould did express its concerns that NDE's sale of the NavCom Site may have impaired Gould's ability to collect on its declaratory judgment.  UF 9, 10, 11.  That was precisely why Gould requested that the Master allow Gould to seek a money judgment for the present value of NDE's share of the estimated total cleanup costs of the East Side EMOU.  UF 47.  As NDE acknowledges, Gould explained to the Master that "Gould has no current money judgment that would allow it to conduct a judgment debtor exam of NavCom" and "NavCom has posted no bond to service payments to Gould."  UF 11.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 7     *08518-028/772928.doc*

The Master denied Gould's request that it be allowed to seek a money judgment for NDE's share of response costs not yet incurred.  UF 48.  The Master specifically addressed Gould's concern over the possible diversion of the proceeds from the NavCom Site sale:

> . . . <u>There is no reason to give it [collectability] particular weight here, just because NavCom has sold the property that is the subject of the cleanup</u>.  There is no indication that NavCom received anything but fair market value ($30 million) for the property.  NavCom has leased another facility and remains in operation.  <u>There is no proof that NavCom is, or will become unable to honor the obligations imposed on it by virtue of this litigation.  There is no evidence of a fraudulent transfer of NavCom's assets</u>.

UF 49 (Emphasis added).  Elsewhere in his Report, the Master also noted:

> "In the present matter NavCom appears to be an ongoing business, with $30 million in recent liquidity in a business climate where 'cash is king.'  While Gould's concerns that the cash will be spent or diverted are understandable, 'collectability' as an equitable factor in this matter is much less compelling than that presented in *Dant*."

UF 29.

At the time the Master issued his decision, unbeknownst to the Master or Gould, NDE had already distributed $28.3 million in dividends to its shareholders in 2007 and 2008, slightly more than the net proceeds from the 2007 sale of the NavCom Site.  UF 50 and 51.

The Master scheduled an evidentiary hearing for November 2010 to establish NDE's share of Gould's response costs incurred since July 31, 2006.  Barely two weeks before the hearing, NDE first advised Gould and the Master that it intended to raise as a defense at that hearing that Gould's response costs must first be "offset" by any insurance proceeds Gould received for the NavCom Site in

1  global settlements with the insurers from 1995-2001.  UF 52.  Gould argued that
2  NDE had waived and/or was precluded from raising this defense.  The Master
3  bifurcated the offset issue for later resolution.  *Id.*

4  The preliminary question of whether NDE could even raise an insurance
5  offset defense in post-trial proceedings was briefed and then argued on January 3,
6  2011.  UF 52.  Just as it had previously asserted in its March 13, 2009 letter,
7  NDE's position was that nothing was currently due to Gould:

8  "For the foregoing reasons, this Court should consider the effect of
9  Gould's global insurance settlements in its calculation of a money
10  judgment.  Those settlements, which paid Gould over $70 million
11  when made years ago, have a value well over twice that today.  Gould
12  does not dispute that this money was received, in substantial part, to
13  compensate Gould for the NavCom Site cleanup costs."[4]

14  UF 53 (Emphasis added).

15  Gould argued that NDE had lost the right to assert an insurance offset by
16  first raising and then abandoning that defense in the original declaratory judgment
17  litigation.  UF 55.  Gould further noted that the $70 million had been paid as part
18  of global settlements for a release of Gould's environmental liabilities across the
19  country, with no allocation of any amount to a particular site; that Gould's demand
20  for the NavCom Site liability "was but a small fraction of the total dollar amount
21  demanded by Gould from its insurers"; and that Gould had paid the first
22  $2.5 million and was entitled to recover that $2.5 million from its insurers prior to
23  any possible offset that would benefit NDE.  UF 56.

24  On  January 18,  2011,  the  Master  issued  his  decision  from  the
25  November 2010 evidentiary hearing, recommending that Gould be awarded a

26

27  ───────────────
   [4]  Indeed, at the January 3, 2011 hearing, NDE's counsel proposed that all
28  of the $70 million be allocated to the NavCom Site because Gould had failed to
   insist on a separate allocation from the carriers for the NavCom Site.  UF 54.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 9   *08518-028/772928.doc*

1    judgment for $2,706,889.46 plus interest.  UF 57.  He awarded Gould every penny

2    Gould had sought to recover.  UF 58.

3         However, he also determined:

4         It is further recommended that entry of judgment be deferred, pending

5         ruling on NavCom's Motion for the Court to Consider Gould's

6         Insurance Settlements in the Calculation of the Money Judgment.

7         That matter was heard on January 3, 2011 and will be decided by

8         means of a subsequent Report and Recommendation.

9    UF 59.

10        On February 28, 2011, this Court issued its Order Accepting and Adopting

11   Report and Recommendation of Special Master No. 2.  UF 60.  Gould promptly

12   notified the Master of the Court's Order on March 2, 2011.  UF 61.

13        By letter dated July 1, 2011, Gould wrote to the Master noting that he still

14   had not issued his decision on NDE's Insurance Offset Motion.  UF 62.  Gould

15   referenced Local Rule 83-9 for the Central District that sets "120 days after a

16   matter is submitted as the time limit for the Court to render its decision." *Id.*

17        Still without a decision from the Master, Gould filed its Motion for Leave to

18   File Supplemental Memorandum and its Supplemental Memorandum, along with a

19   copy of the California Court of Appeals' August 16, 2011 decision that affirmed

20   the dismissal of NDE's state court action against Gould.  UF 63.  NDE vigorously

21   opposed Gould's Motion, declaring the August 16, 2011 decision "irrelevant" and

22   that "Gould has failed to explain how it could possibly be prejudiced by the

23   Court's consideration of these insurance payments at this stage of the

24   proceedings." UF 64.

25        Less than two weeks later, the Master issued his decision denying NDE's

26   Motion.  He rejected Gould's argument that NDE was barred from raising the

27   insurance offset defense in the post-trial proceedings and instead relied solely on

28   the affirmance of the dismissal of NDE's state court claims against Gould.  UF 65.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 10    *08518-028/772928.doc*

NDE filed Objections to the Master's Report No. 3.  UF 67.  Although its Objections were denied, resolution of those Objections delayed entry of Gould's first money judgment for over $2.7 million until November 3, 2011.  UF 66, 68, and 69.  Less than two weeks later, NDE appealed the November 3, 2011 judgment, but this time posted a bond that prevented Gould from pursuing any discovery based on that money judgment.  UF 70.

On January 3, 2012, Gould wrote to NDE requesting financial assurances from NDE and asking that NDE voluntarily produce information regarding what happened to the proceeds from the 2007 sale because (1) remediation construction costs were about to ramp up, (2) there was no public information available regarding what happened to those proceeds, (3) that the limited publically available financial information on NDE, a privately held company, suggested NDE could not pay for its anticipated share of near term construction costs from current operations, and (4) the statute of limitations could be running on potential fraudulent transfer claims if NDE had indeed made such transfers rendering it incapable of paying its share of costs.  UF 15 and UF 71.

NDE responded by letter dated January 23, 2012, stating:

"NavCom has carefully considered your request for information, but believes that your request is unfounded, and as a result, NavCom will not be providing any information to Gould relating to the 2007 sale of the NavCom property to Vons.

. . .

NavCom has met its obligations owed to Gould and Gould's most recent request for information is improper and should not even be considered.

UF 72 (Emphasis added).

On January 30, 2012, Gould responded:

". . . Gould seeks this information to ensure that the statute of

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 11      08518-028/772928.doc

limitations does not run in the event the proceeds from the Vons sale were improperly transferred out of a small closely-held company that sold its principal asset immediately after the entry of a declaratory judgment in favor of Gould four and one-half years ago. Unfortunately, NDE's January 26[sic], 2012 response provides Gould no assurances with respect to those proceeds."

UF 73.

Gould then filed its Motion for Discovery with the Master.  UF 17.  Gould's motion raised a matter of first impression, whether a federal court could order discovery "in aid of" Gould's declaratory judgment where Gould's only money judgment was fully bonded.  UF 74.  NDE opposed that Motion, baldly asserting:

"There are no facts to support Gould's right to discovery of NDE's finances related to the sale of the Property, and there is no legal basis for Gould's request to seek post-judgment discovery at this juncture.

UF 75 (Emphasis added).

Over NDE's Opposition, the Master granted Gould's Motion.  UF 27.  He held that "NavCom is a small, privately held company and its financial resources are not transparent."  UF 27.  In reaching his ruling, the Master also held that Gould's "response costs are expected to accelerate sharply in the immediate future."  UF 78.  He concluded:

"Given the relevance of the proposed discovery to collection under the declaratory judgment, the impending deadline set out by the FTA ultimate statute of repose, and the tailored nature of the discovery requests, it is recommended that the Plaintiff's Post Judgment Request for Production be granted . . . ."

UF 78.

NDE filed Objections to the Master's Report.  UF 80.  NDE represented to this Court that Gould's discovery request and concern over fraudulent transfers

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 12     08518-028/772928.doc

was "without any cause whatsoever" and "without a shred of evidence."  UF 80. NDE taunted:

> If Gould believes there has been a breach by NDE of the CFTA, and if Gould believes it can plead that claim in full compliance with the rules requiring its assertions to be grounded in a good faith, reasonable investigation, there is nothing in the way of its filing that separate action."

UF 80.

This Court issued its Order approving the Master's ruling on September 7, 2012.  UF 82.  NDE appealed that Order on September 17, 2012 (UF 83) and filed its Motion to Stay this Court's September 7, 2012 Order on September 24, 2012. UF 84.  In support, NDE represented to this Court that "the predicate of Gould's asserted need for now evaluating a potential claim under the CFTA — that NDE may be unable to financially respond in the future to the declaration judgment — is wholly speculative."  UF 85.

In the same document, NDE represented that "Granting NDE's motion for stay has no effect whatsoever on . . . its [Gould's] ability to seek reimbursement from NDE for its share of the CERCLA response costs incurred . . . ."  UF 86. (Dkt. # 552-1, pp. 11-12).  This Court denied NDE's Motion to Stay by Order dated October 19, 2012.  UF 87.

NDE then filed its Motion to Stay with the Ninth Circuit.  9th Cir. Dkt. # 3-1.  NDE advised that the "reason for Gould's requests . . . is its pronouncement (based entirely on speculation) that NDE has somehow absconded with the proceeds of the 2007 sale of the NavCom Site by distributing such proceeds to its shareholders . . . ."  UF 88 (Emphasis added).

The Ninth Circuit denied NDE's Motion to Stay on January 23, 2013. UF 89.  Rather than risk contempt for failure to comply with this Court's September 7, 2013 Order, NDE voluntarily dismissed its appeal on February 6,

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 13    08518-028/772928.doc

2013, the day before it provided to Gould its 2007-2011 financial statements and other court-ordered production.  UF 21 and 90.

Those documents establish that on July 12, 2007 NDE received $28,134,785 million from the sale of the NavCom Site and that within 18 months, it had distributed $28,304,000 million to its shareholders.  UF 50 and 51.  In the following three years, NDE distributed an additional $8.7 million to its shareholders; in each of those years, NDE paid dividends that exceeded NDE's annual net income.  UF 93.

## ARGUMENT

**1.    The Timeliness of Gould's CFTA Claims is Governed By California Civil Code § 3439.09(a), Not California Common Law.**

The timeliness of Gould's fraudulent transfer claims based on "actual intent to hinder, delay or defraud" is governed by California Civil Code ("CFTA") § 3439.09(a).  Such claims are timely if filed

> "…within four years after the transfer as made…or, if later, within one year after the transfer…could reasonably have been discovered by the claimant."

*Id*.

Despite the fact that the timeliness of Gould's claims is governed by this provision of CFTA, NDE cites only two cases involving fraudulent transfer claims.  Neither of these cases remotely supports NDE's position here, that as a matter of law Gould's claims based on "actual intent" are time-barred.

In *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003), defendants sought to dismiss as time-barred plaintiff's fraudulent transfer claims challenging transfers of investment fees more than four years old. Defendants noted that entries on exhibits to plaintiffs' own complaint revealed that, contrary to their allegations, investment fees were being paid by Slatkin, defendant's alleged co-conspirator.  The Court nonetheless denied defendant's

motion:

> "While the entries raise a question of fact regarding plaintiffs'
> knowledge, the court cannot find that such evidence establishes, as a
> matter of law, that plaintiffs knew or should have known of the
> transfers at the time they occurred."

*Id*. at 1146.  Thus, while *Neilson* does at least recite the text of CFTA 3439.09(a), the case certainly does nothing to support NDE's argument that a mere suspicion is enough to commence the running of the § 3439.09(a) statute of limitations.

The second CFTA case cited by NDE is the unpublished opinion, *SBAM Partners v. Oh*, Case No. B168187, 2004 WL 2580424 (Cal. Ct. App. Nov. 12, 2004).  NDE describes the case as "remarkably similar to this one."  NDE Memo, p. 9.  It is nothing of the sort.  There the trial court dismissed on a demurrer plaintiff's third attempt to plead claims under CFTA, without leave to replead, because the amended complaint still contained no allegations that appellant could not reasonably have discovered the transfers earlier.  Plaintiff sought to set aside transfers where deeds had been recorded in 1996 and 1998, and the judgment was secured in 1997 and remained unsatisfied as of November 2002, when an assignee of the judgment filed suit to set aside the fraudulent transfers.  The court found the assignee stood in the shoes of the assignor, and had at least inquiry notice of the property transfers because of recorded deeds.  As a result, assignee's claims were time-barred.[5]

Here of course, Gould challenges not NDE's sale of its property, but NDE's distribution of dividends to shareholders.  As a private company, there was no deed records' office or any other public source of information available to check to determine if NDE had paid dividends to its shareholders.  And of course, Gould did not secure a money judgment until November 3, 2011, a money judgment that

---

[5] For various reasons, the court in *SBAM* did not even apply the 4-year limitations period under CFTA § 3439.09(a), but instead a three year period under Cal. Civ. Code § 338.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 15     *08518-028/772928.doc*

1    NDE immediately appealed and bonded to avoid Gould's ability to take discovery
2    to enforce its money judgment.[6]

3         Gould refers the Court to another unpublished opinion, *Hu v. Wang*, Case
4    No. E045445, 2009 WL 1919367 (Cal. Ct. App. July 6, 2009). *Hu* reaches the
5    opposite conclusion from *SBAM* — it holds that constructive notice of recorded
6    deeds "does not necessarily mean that she [plaintiff] should have discovered them
7    for purposes of the statute of limitations" under CFTA. In rejecting defendant's
8    argument that plaintiff's fraudulent transfer claims were time-barred, the court also
9    noted that the phrase "within one year of the transfer in CFTA § 3439.09(a) . . . has
10   been construed to mean not only discovery of the transfer itself, but also discovery
11   of fraudulent nature." *Id.* at 6. Many other jurisdictions have reached the same
12   conclusions, most recently *Schmidt v. HSC, Inc.*, ___ P.3d ___ (Ha. 2014), 2014
13   WL 144153, p. 13; *accord, In re Main Industrial Loan & Finance*, 454 BR 133,
14   137-38 (Bktcy. Ct. Hawaii 2011) (noting that most states follow the same rule).

15        Ultimately, NDE relies entirely on three tort cases, two medical malpractice
16   cases and one fraud claim as governing how the "discovery rule should apply to
17   this case." Clearly none of the cases construes CFTA § 3439.09(a)'s statutory
18   language "within one year after the transfer could reasonably have been discussed
19   by the claimant." All rely instead on the common law discovery rule and concern
20   a plaintiff who knew that he or she had suffered immediate physical harm or
21   financial loss.[7] That is perhaps why NDE repeatedly conflates Gould's knowledge

22

23        [6] In its Opposition to Gould's Motion for Discovery Regarding Proceeds
24   from 2007 Sale of NavCom Real Property, NDE cited to the money provisions of
     the California Code of Civil Procedures that allow post-money judgment discovery
     to argue that discovery based on declaratory judgment was not permissible. UF 76.

25        [7] NDE studiously avoids any discussion of the actual facts of the tort cases
26   on which it relies, for good reason. They bear no resemblance to the facts in this
     case.

27        In *Jolly v. Eli Lilly,* 44 Cal. 3d 1103 (1988), plaintiff's claim was held
28   time-barred where (1) she knew in 1972 (a) that her mother had used DES when
     she was *in utero*; (b) that DES daughters could suffer injuries from their mothers'
     use of the drug; and (c) that she had just been diagnosed with a precancerous

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 16     08518-028/772928.doc

that NDE had sold the NavCom Site with knowledge that NDE had transferred the proceeds of that sale to its shareholders so as to render NDE insolvent.   But knowledge of the sale of the NavCom property certainly does not establish, as a matter of law, that Gould could reasonably have known that NDE had transferred all the proceeds of that sale to its shareholders.   As held by the Special Master in his May 2, 2010 Report:

> [t]here is no reason to give it…[the collectability of Gould declaratory judgment] particular weight here, just because NavCom has sold property that is the subject of the cleanup.   There is no indication that NavCom received anything but fair market value ($30 million) for the property.   NavCom has leased another facility and remains in operation.   There is no proof that NavCom is, or will become unable to honor the obligations imposed on it by virtue of this litigation. There is no evidence of a fraudulent transfer of NavCom's assets.[8]

UF 49 (Emphasis added).   In other words, NDE had simply liquidated its real estate and was now flush with cash available to pay its CERCLA liability to Gould.

**2.   Genuine Issues of Material Fact Prevent This Court From Ruling as a Matter of Law that Gould Could Reasonably Have Discovered NDE's Fraudulent Dividend Distributions before February 7, 2013.**

As held by the Master and adopted by this Court, "NavCom [NDE] is a small, privately held company and its financial resources are not transparent."

---

(Cont.)

condition; (2) in 1976 and 1978 she had two separate surgeries to remove malignancies; and (3) she still did not file suit until 1981.

In *Kline v. Turner*, 87 Cal. App. 4th 1369 (2001), the court barred Kline's fraud action filed in 1999 because the circumstances under which he was swindled out of $50,000 in 1990 would have led a reasonable man to immediately investigate and discover the misdeed.

[8] The May 2, 2010 Master's Report, nearly three years after the sale of the NavCom Site, presumably bears more weight than Mr. Grantham's saber-rattling in his June 20, 2005 letter addressing a possible sale that was never consummated. And the Master's May 2, 2010 Report was, by stipulation of both parties, accepted and adopted by this Court.  UF 92.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 17      08518-028/772928.doc

UF 27.  As such, there were no public sources available to Gould to investigate to determine whether NDE had distributed the 2007 sale proceeds to its shareholders. Indeed, that finding is at the heart of the Master's discovery ruling in his August 2, 2012 Report.   In opposing Gould's requested discovery, NDE never once suggested or argued to the Master that Gould had failed to adequately investigate its concerns.   Instead, it argued to the Master that Gould had no right to such information because:

> [T]here are no facts to support Gould's right to discovery of NDE's finances related to the sale of the Property, and there is no legal basis for Gould's request to seek post-judgment discovery at this juncture.

UF 75.   NDE made this statement to the Master knowing full well that it had indeed made dividend distributions that fully justified Gould's discovery request.

Later, in its Objections filed with this Court, NDE upped the ante to also argue that NDE had a right of financial privacy that barred the production of such data.  UF 81.  Now it tries to reverse course and argue that Gould's mere "concern" that proceeds might be diverted is more than enough to commence the running of the statute of limitations.  NDE cannot have it both ways.[9]

Since there are clearly no public sources for this information, Gould had to secure this information from NDE itself.  Accordingly, NDE chastises Gould for not requesting NDE's private financial statements and other sale-related information until January 3, 2011 "to ever informally approach NavCom and request information about proceeds from the sale of the NavCom Site and NavCom's finances."  NDE's Memo, pp. 10-11, 13.

NDE appears to recognize the absurdity of its own suggestion that NDE might voluntarily have disclosed this information to Gould if only Gould had

---

[9] NDE's UF 19 notes that Gould submitted a 2011 Dunn & Bradstreet report and internet reports from Westlaw and the Investex Group in support of Gould's Motion for Discovery.  But these documents report only gross sales of NDE, not its profitability, dividend distributions, or other financial data essential to determining its solvency under CFTA.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 18      08518-028/772928.doc

1  nicely made such a request before January 3, 2012.  In any event, the litany of
2  letters and pleadings in which NDE denies any liability to Gould for response costs
3  all the way through the summary dismissal of its last appeal on July 26, 2013, as
4  well as its 13-month fight to prevent discovery of its financial statements, at a
5  minimum, raises an issue of material fact as to whether NDE would have produced
6  this information voluntarily prior to its court-mandated production on February 7,
7  2013.

8         Since it is obvious to any reasonable observer that NDE would never have
9  produced any financial data voluntarily, NDE's argument really boils down to the
10 claim that, as a matter of law, the record before this Court establishes that Gould
11 could reasonably have discovered NDE's financial statements through legal
12 process at any time after the entry of the declaratory judgment on April 26, 2007.

13        NDE is dead wrong ─ disputes of material fact abound, as Gould already
14 argued at length in its Reply to NDE's Opposition to Plaintiff's Motion to Reopen
15 Case.  Dkt. # 631, pp. 7-16.  NDE appealed Gould's declaratory judgment to the
16 Ninth Circuit on April 27, 2007.  Gould tried to reopen this case to enforce its
17 judgment in March 2009, while the case was still on appeal, and this Court held it
18 did not have jurisdiction and could not reopen the case "until the Writ of Mandate
19 issues." UF 41.  Would it really have entertained a motion for discovery of NDE's
20 financial statements before the appeal was over and the amount NDE owed Gould
21 had been determined?

22        The Court then referred all further proceedings in the case to the Special
23 Master.  UF 45.  [Dkt. # 481].  The Order provided in relevant part:

24        The Special Master shall hear and determine all claims and
25        contentions of the parties, relating to Plaintiff's Motion to Enforce
26        Judgment herein, including its motion for entering a money judgment
27        for its past CERCLA response costs from August 1, 2006 to present.
28        This direction shall include hearing and determining all motions,

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 19      08518-028/772928.doc

overseeing discovery, and conducting an evidentiary hearing and reporting his findings of fact and conclusions of law to the Court. UF 46.

On August 2, 2012, the Master did indeed rule that NDE must produce its financial statements, citing his authority under 28 U.S.C. § 2202 and under Fed. R. Civ. P. 69(a) in "aid of judgment," *i.e.*, Gould's April 26, 2007 declaratory judgment.  UF 20.  From this, NDE leaps to the conclusion that, as a matter of law, Gould could reasonably have secured the same discovery at any time after August 2007.  In so doing, NDE ignores (1) the novelty of Gould's motion; (2) the procedural posture of the case at the time of the Master's discovery ruling; and (3) the Master's fact-findings in support of his ruling.

As Gould openly acknowledged in its Motion for Discovery, Gould found no case law anywhere that had allowed post-judgment discovery in "aid of judgment" where the debtor had posted a full supersedeas bond.  UF 74.  It found only one case in the country, *Halliburton Energy Services, Inc. v. NL Industries, Inc.*, 618 F. Supp. 2.d 614 (S. Tex. 2009) where plaintiff had both a CERCLA declaratory judgment and a fully bonded money judgment on appeal, but nonetheless sought discovery in "aid of judgment."  While the *Halliburton* Court denied discovery, it did so on factual grounds alone, facts radically different from those in this case.  Relying on this slender reed, Gould filed its Motion, in a case of first impression.  Even now, it is not clear that the Master and Court had the authority to order that discovery, since NDE voluntarily dismissed its Ninth Circuit appeal rather than risk a contempt hearing.

On the procedural side, NDE successfully delayed the entry of Gould's first money judgment until November 3, 2011, nearly two years after the Court referred this case to a Special Master.  UF 45, 46, and 69.  Although the Master ruled on January 18, 2011 that Gould had the right to recover over $2.7 million in response costs from NDE, every penny Gould had requested, he also recommended that the

entry of a money judgment against NDE be deferred.  UF 58 and 59.  He did so because NDE had raised a new defense, an offset of Gould's insurance settlements, barely two weeks before the November 2010 evidentiary hearing on Gould's response costs.  UF 52.  The parties promptly argued the insurance offset issue on January 3, 2011, but the Master did not reject NDE's insurance offset defense until August 29, 2011.  UF 59 and 65.  After denying NDE's objections to the Master's ruling, this Court entered Gould's first money judgment against NDE on November 3, 2011.   UF 69.

Until then, NDE remained adamant that it owed Gould nothing under the 2007 declaratory judgment on the basis that Gould's insurance settlements fully offset any response costs Gould might incur for the Eastside EMOU, and no court had expressly rejected NDE's argument.[10]  Until it first secured a court-ruling that rejected NDE's insurance offset defense, Gould reasonably concluded that it could not have convinced the Master, who had already ruled that NDE's sale of its real property was no cause for alarm, to order NDE to produce its confidential financial information.

In addition to ignoring the procedural context for Gould's Motion, NDE omits the factual predicates for the Master's decision to grant discovery.  Gould's Motion noted that, after many years of planning and securing necessary permits and approvals from multiple local, state, and federal agencies, major construction was expected to begin shortly, with expenditures of approximately $1,000,000 per month for 12-15 months.  UF 74A.  Given that accelerated rate of expenditures, Gould argued that based on limited, unverifiable public data available on NDE's gross sales, it appeared that NDE would no longer be available to fund its 60%

---

[10]   NDE of course continued to deny any liability to Gould, immediately appealing the November 3, 2011 money judgment.  NDE's appeal of the money judgment was dismissed in a four-page unpublished memorandum on July 26, 2013.  UF 95.  As Gould had argued to the Master on January 3, 2011, the Ninth Circuit held that NDE had waived any insurance offset defense by failing to raise it when the case was first litigated in December 2006.  Id.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 21     08518-028/772928.doc

1    obligation from its ordinary cash flow generated by current operations.  UF 74B.

2    Thus, the only realistic source of payment of NDE's share was the proceeds from

3    the 2007 land sale.  Gould further noted that the statute of ultimate repose under

4    the UFTA was also fast approaching.   UF 74C.

5        The Master expressly found:

6        Due to the work being done, those response costs [to implement the

7        groundwater plume-control remedy] are expected by Gould to

8        accelerate sharply in the immediate future.   Moreover, Gould is

9        shouldering the initial burden of doing the remediation and bearing

10       the costs.   It must seek reimbursement from NavCom after first

11       fronting the money.  This is not a situation where NavCom is funding

12       the cleanup and then seeking reimbursement from Gould.    No

13       NavCom money is at risk until the cleanup is fronted by Gould and

14       occurs.   Gould is squarely burdened with the risk of NavCom not

15       being able to pay for its part of this long-term project.

16   UF 79 (Master Report No. 5, Dkt. # 549, p. 2) (Emphasis added).  The Master also

17   relied on "the impending deadline set out by the [U]FTA ultimate statute of

18   repose" as a second factor that lead him to grant Gould's Motion for Discovery.

19   UF 78.   These unique factual circumstances tipped the balance in favor of the

20   requested discovery.[11]   Neither factor was present in the years immediately after

21   entry of the 2007 declaratory judgment.

22       Until NDE finally produced its financials on February 7, 2013, it continued

23   to deny that the facts and law relied on by the Master supported such discovery.

24   NDE consistently dismissed Gould's concern over potential fraudulent transfers as

25

26       [11]   In stark contrast, in his May 2, 2010 Report that rejected Gould's request
27   to pursue a money judgment for the present value of NDE's total share of the 30-
     year remedy, the Master emphasized the unfairness to NDE of facing "a very large
     outlay that will be immediately due and owing [under a money judgment for the
28   present value of NDE's 60% share of the cleanup] . . . instead of [payments]
     dribbled out over 30 years as costs are incurred."  UF 91.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 22     08518-028/772928.doc

"based on nothing more than speculation" (UF 77) and its request for financial statements as "unfounded" and "improper."  UF 72.  Now NDE suddenly reverses direction, and insists that Gould could reasonably have known of NDE's dividend distributions from shortly after August 2007.  NDE's argument is not credible, and certainly is not based on undisputed facts.  NDE's own prior statements to this Court alone create an issue of material fact that defeats its current Motion.

NDE may also suggest that Gould could reasonably have discovered NDE's dividend distributions at any time after entry of the declaratory judgment by filing a separate lawsuit alleging fraudulent transfer claims and taking discovery.  NDE's unsuccessful Objections to the Master's Report recommending discovery made precisely this argument:

> If Gould believes there has been a breach by NDE of the CFTA, <u>and if Gould believes it can plead that claim in full compliance with the rules requiring its assertions to be grounded in a good faith, reasonable investigation</u>, there is nothing in the way of its filing a separate action and seeking to conduct discovery there.

UF 80 (Emphasis added).

NDE's Statement clearly refers to counsel's obligations under Fed. R. Civ. P. 11.  Gould's counsel reasonably concluded that it could not meet the standards of Rule 11 without first seeking discovery of NDE's financial statements in this case.  UF 96.  Further, Gould's counsel reasonably concluded that, without discovery of NDE's financial statements, it also could not comply with the strictures of Fed. R. Civ. P. 9(b).  UF 96.  Rule 9(b) provides: "In alleging fraud…, a party must state with particularity the circumstances constituting fraud."  *Id.*

NDE repeatedly has argued to this Court that Gould had no "shred of evidence" to support its concerns over the possible fraudulent distribution of the proceeds from the 2007 sale of the NavCom Site.  UF 80 and 88.  Indeed, NDE went far beyond simply commenting on the evidence that Gould did not yet have.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 23       08518-028/772928.doc

NDE boldly proclaimed in April 2012 that:

> "[t]here are no facts to support Gould's right to discovery of NDE's finances related to the sale of the Property."

UF 75.

The financial statements and other documents NDE finally produced flatly contradict NDE's representation to this Court.  They show that on July 12, 2007, NDE received $28,134,785 in net proceeds from the sale of the NavCom Site, and that by the end of 2008, NDE had distributed $28,304,000 in dividends to its shareholders.  UF 50 and 51.[12]  Dividend distributions continued to exceed NDE's net income for each of the following three years as well.  UF 93.

At a minimum, there are genuine issues of material fact as to whether Gould could have reasonably discovered the transfers within four years by filing a separate action.  At worst, NDE purposely misled Gould and the Court in an effort to protect its transfers from scrutiny.

## CONCLUSION

NDE Motion for Partial Summary Judgment cherry-picks evidence to argue that Gould failed to meet a supposed duty to inquire based on the merest "suspicion."  In fact, the proper standard is whether Gould "could reasonably have discovered" NDE's transfers within 4 years of those transfers.  Given NDE's status as a private company, Gould could investigate the possible distribution of sale proceeds only by obtaining records directly from NDE.  The information was not available through any means other than court-ordered discovery, and even then, only after NDE complied with that court-ordered discovery.  NDE's private financial statements revealed not only the fact of NDE's dividend distributions but, most importantly that the distributions were fraudulent because they were made

---

[12]  To this day, NDE continues to refuse to disclose to Gould the dates and amounts of any dividend distributions, the percentage ownership interest of NDE's individual shareholders, or any financial information since its 2011 financial statements.  UF 94.

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 24        08518-028/772928.doc

when, under CFTA, NDE was insolvent.  That discovery could not have been secured until after entry of Gould's first money judgment on November 3, 2011, and even then, Gould's motion to obtain that discovery presented an issue of first impression.  Gould's effort succeeded but, as the record discloses, NDE still managed to avoid disclosure of any records for more than six additional months.

Gould's pleadings in opposition to NDE's Motion for Partial Summary Judgment amply demonstrate material facts in dispute as to when Gould "could reasonably have discovered" NDE's dividend transfers and that those dividends were fraudulent under CFTA.  Its Motion should be denied.

DATED this 17th day of March, 2014.


LANDYE BENNETT BLUMSTEIN LLP


By: /s/ David N. Gouler
_____
*Attorneys for Plaintiff Gould
Electronics Inc.*

LANDYE BENNETT BLUMSTEIN LLP
1300 SW Fifth Avenue, Suite 3500
Portland, OR 97201
T:(503)224-4100/F:(503)224-4133

Gould's Memorandum in Opposition to NDE's Motion for
Partial Summary Judgment - 25      *08518-028/772928.doc*

# CERTIFICATE OF SERVICE

I hereby certify that I served the accompanying **GOULD'S MEMORANDUM IN OPPOSITION TO NDE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on the following individuals:

David J. Ginsberg
Nathaniel Wood
Crowell & Moring LLP
515 S. Flower Street, 40th Floor
Los Angeles, CA 90071
dginsberg@crowell.com
nwood@crowell.com

*Of Attorneys for Defendant William Snyder*

by the following indicated method or methods on the date set forth below:

☒    CM/ECF system transmission.

☐    E-mail.

☐    Facsimile communication device.

☒    U.S. Postal Service, regular mail, postage prepaid.

☐    Hand-delivery.

☐    Overnight courier, delivery prepaid.

Dated this 17th day of March, 2014.

LANDYE BENNETT BLUMSTEIN LLP

_/s/ Lee Ann Mead_

Lee Ann Mead, Assistant to David N. Goulder
*Attorneys for Plaintiff Gould Electronics Inc.*